**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**VECTOR ENVIRONMENTAL GROUP, INC.,**

    **Plaintiff,**

            Case No. 06-CV-11264

v.

            **HONORABLE DENISE PAGE HOOD**

**3M COMPANY,**

    **Defendant.**
_____/

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

**I.** **INTRODUCTION**

  This matter is before the Court on Plaintiff's Motion for Preliminary Injunction filed March 30, 2006. The Defendant filed a Response on April 20, 2006. Plaintiff filed a Reply on April 24, 2006.

**II.** **STATEMENT OF FACTS**

  Plaintiff, Vector Environmental Group, Inc., is the developer of a product that allows for efficiency in the tu tone painting of cars and trucks. (Compl. ¶ 5). Defendant, 3M Company is a competitor of the Plaintiff's. (Compl. ¶ 11). The Plaintiff developed TuTone, a product that allowed for wet-on-wet painting of vehicles. (Def.'s Resp. at 3). Plaintiff obtained a contract with Ford Motor Company ("Ford") to exclusively supply its TuTone product to Ford plants. (Compl. ¶ 9). Defendant obtained samples of Plaintiff's product from one or more of Ford's plants. (Compl. ¶¶ 12 - 13). Defendant has created a competitive product to Plaintiff's TuTone product, which Plaintiff asserts is an actual or substantial copy of the Plaintiff's product. (Compl. ¶ 15). Defendant

1

had actual knowledge of Plaintiff's agreement to supply Ford with its product. (Compl. ¶ 18). Defendant has tested its product at Ford plants and intends to provide its product to Ford as a replacement to Plaintiff's product. (Compl. ¶ 17). Plaintiff filed the Complaint on March 24, 2006, alleging (1) trade secret misappropriation in violation of the Michigan Uniform Trade Secrets Act; (2) intentional interference with a contractual relationship; and (3) civil conspiracy.

### III. APPLICABLE LAW & ANALYSIS

Four factors must be balanced and considered before the Court may issue a preliminary injunction pursuant to Fed.R.Civ.P. 65(b): (1) the likelihood of the plaintiff's success on the merits; (2) whether the plaintiff will suffer irreparable injury without the injunction; (3) the harm to others which will occur if the injunction is granted; and (4) whether the injunction would serve the public interest. *In re Delorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985); *In re Eagle-Pitcher Industries, Inc.*, 963 F.2d 855, 858 (6th Cir. 1992); and *N.A.A.C.P. v. City of Mansfield, Ohio*, 866 F.2d 162, 166 (6th Cir. 1989). "None of these factors, standing alone, is a prerequisite to relief; rather, the court should balance them." *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir. 1996).

#### A. Likelihood of Success on the Merits

Plaintiff asserts that it has a high likelihood of success on both the Michigan Uniform Trade Secrets Act violation claim and the intentional interference with a contractual relationship claim.[1]

#### 1. Michigan Uniform Trade Secrets Act

---

[1] The Complaint alleges an additional third claim, civil conspiracy, which was not addressed by the Plaintiff in the Motion for Preliminary Injunction.

Plaintiff alleges, among other things, trade secret misappropriation in violation of the Michigan Uniform Trade Secrets Act ("MUTSA"). To properly assert a claim under the MUTSA, a plaintiff must show the information is a trade secret and the defendant had neither express nor implied consent to use the information. *See Sherman & Co. v. Salton Maxim Housewares, Inc.*, 94 F. Supp. 2d 817, 821-22 (E.D. Mich. 2000). The MUTSA defines a trade secret as follows:

> Information, including a formula, pattern, compilation, program, device, method, technique, or process, that is both of the following:
> (I) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
> (ii) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

M.C.L. 445.1902(d). The "essence of a trade secret is that it derives its value from secrecy." *Stromback v. New Line Cinema*, 384 F.3d 283, 305 (6th Cir. 2004). "A party alleging trade secret misappropriation must particularize and identify the purportedly misappropriated trade secrets with specificity." *Compuware Corp. v. International Business Machines*, 2003 U.S. Dist. LEXIS 24894 * 17 (E.D. Mich. 2003), *citing Utilase, Inc. v. Williamsson*, 1999 WL 717969 *6 (6th Cir. 1999) (unpublished opinion).

Plaintiff argues that its product derived independent economic value because the components of the product were not known by the Plaintiff's competitors. To support this contention Plaintiff submits a letter from Ford stating that the Plaintiff was to be the supplier for "the innovative industry first process of applying TuTone Accent Colors directly over wet prime." (Pl.'s Reply, Ex. B). The agreement between the Plaintiff and Ford also states that the Plaintiff is to be the "sole supplier of TuTone masking products for the new Wet on Wet painting process." (Pl.'s Reply, Ex. D). The use of the Plaintiff's product alone was estimated to bring in $300 million in profits for Ford in 2003.

3

(Pl.'s Reply, Ex. C).  When speaking of Plaintiff's product, a plant manager at Ford's Kentucky Truck Plant stated, "This is the kind of success we need at Ford Motor Company... And what's been so exciting to me is the lateral thinking and truly thinking out of the box and saying how do we do something that's never been done before."  *Id*.  Defendant argues that the dimensional map from Ford with size could be measured at any Ford plant or dealership.  Plaintiff has produced sufficient evidence that the alleged trade secret has independent economic value and was not readily ascertainable by proper means.

Plaintiff also argues that its product was the subject of reasonable secrecy efforts.  Plaintiff submits the affidavits of John Syron, president of the Plaintiff, and John Nearon, an independent contractor working for the Plaintiff to support this assertion.  Both Mr. Syron and Mr. Nearon testified that the Plaintiff used several methods to ensure secrecy, including (1) using types of films, adhesives, shapes and sizes of the Plaintiff's product that are not readily apparent without inspection; (2) delivering the product under controlled conditions to proper Ford plants only; (3) each shipment is signed off on by Mr. Syron personally; (4) suppliers are bound to confidentiality agreements; (5) Ford has agreed and been repeatedly told that the product was confidential and should not be shared in any fashion with others and (6) the product was not permitted to be removed from any plant by Plaintiff's competitors.  (Pl.'s Reply, Ex. E ¶ 9, Ex. F ¶¶ 6, 9).  Based upon the above listed methods used by the Plaintiff, there is sufficient evidence to support the contention that the Plaintiff used reasonable secrecy efforts, for purposes of a motion for preliminary injunction.  Plaintiff has produced sufficient evidence that it possessed a trade secret for purposes of a preliminary injunction.         The Michigan Uniform Trade Secrets Act also provides a definition of misappropriation, stating:

4

>   (b) "Misappropriation" means either of the following:
>   >   (*I*) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means.
>   >   (*ii*) Disclosure or use of a trade secret of another without express or implied consent by a person who did 1 or more of the following:
>   >   >   (A) Used improper means to acquire knowledge or the trade secret.
>   >   >   (B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was derived from or through a person who had utilized improper means to acquire it, acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or derived from or through a person who owned a duty to the person to maintain its secrecy or limit its use.
>   >   >   (C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

M.C.L. 445.1902(b). Improper means, for purposes of the MUTSA, "includes theft, bribery, misrepresentation, breach, or inducement of a breach of a duty to maintain secrecy or espionage through electronic or any other means." M.C.L. 445.1902(a).

Plaintiff claims that the Defendant used improper means to acquire its trade secret and then used the trade secret without the Plaintiff's consent. Plaintiff argues that the Defendant obtained its product through theft, and through re-engineering copied and used Plaintiff's trade secret. Plaintiff asserts that the Defendant's employees have removed or attempted to remove the Plaintiff's product from a Ford plant; and that one of Defendant's employees, specifically Brendan Smith, was caught attempting to remove the Plaintiff's product by Ford security in 2004. (Pl.'s Reply, Ex. E ¶ 10). Plaintiff states that some of its product, marked "Sample Material. Evaluation purposes only. Property of Vector Environmental Group, Inc.," was stolen from a Ford plant in 2003 or 2004. (Pl.'s Reply, Ex. E, ¶ 11). Plaintiff further states that Defendant's wet-on-wet masking product is identical to the Plaintiff's product in size, shape, material and adhesive. (Pl.'s Reply, Ex. E, ¶ 12). Plaintiff further claims that Defendant's product also includes the exact same feature that Ford asked the

Plaintiff to change, but was never changed. *Id*. Plaintiff argues that if the Defendant had independently developed its product with input from Ford it would not have included the feature Ford wanted changed. *Id*. Finally, Plaintiff asserts that Defendant's wet-on-wet masking product is Defendant's first attempt to develop a film based product, and that Defendant copied the film used by the Plaintiff. (Pl.'s Reply, Ex. E ¶ 13).

Defendant argues that it had previously developed film based products that were not tested by Ford. (Def.'s Resp., Ex. A ¶ 6). Defendant claims that Ford was having problems with the Plaintiff's product. (Def.'s Resp., Ex. A ¶ 7-8). Defendant states that upon Ford's suggestion to develop an improved tape, one of its employees, Brendan Smith, took a roll of the Plaintiff's tape that was sold to Ford. (Def.'s Resp., Ex. A ¶ 9). Plaintiff's sales agent saw Mr. Smith take the tape and told him to return it, which he did. *Id*. Defendant claims that the next day he was given a sample of the Plaintiff's tape by Ford. *Id*. Defendant asserts that no one from Ford ever stated that the Plaintiff's product was confidential and that Ford did not have the right to give it away. (Def.'s Resp., Ex. A ¶ 10). Plaintiff asserts that it never sold its tape to Ford, but rather it was testing the product at Ford. (Pl.'s Reply, Ex. E ¶ 11).

There is some evidence to suggest that the Defendant misappropriated the Plaintiff's trade secret, and as such Plaintiff has some likelihood of success on the merits. However, this likelihood of success does not appear to be strong.

### 2. Intentional Interference With A Contractual Relationship

The elements of an intentional interference with a contractual relationship claim are (1) the existence of a contract; (2) breach of that contract; (3) the breach was at the instigation of the defendant; and (4) the defendant's instigation of the breach was without justification. *Safie*

*Enterprises, Inc. v. Nationwide Mutual Fire Ins. Co.*, 146 Mich.App. 483, 496 (Mich. App. 1995); *Trupiano v. Red Spot Westland, Inc.*, 2001 WL 1463784 * 1 (Mich. App. 2001) (unpublished opinion). An intentional interference with a contractual relationship claim requires "a showing of illegal, unethical or fraudulent conduct in addition to intentional interference." *United Rentals (North America), Inc. v. Keizer*, 355 F.3d 399, 413 (6th Cir. 2004) (internal quotations omitted); quoting *Trepel v. Pontiac Osteopathic Hosp.*, 135 Mich.App. 361 (Mich. App. 1984).

Defendant argues that the Plaintiff's intentional interference with a contractual relationship and civil conspiracy claims are preempted by the MUTSA. The relevant portion of the MUTSA reads:

> (1) Except as provided in subsection (2), this act displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret.
> (2) This act does not affect any of the following:
>     (a) Contractual remedies, whether or not based upon misappropriation of a trade secret.
>     (b) Other civil remedies that are not based upon misappropriation of a trade secret.
>     (c) Criminal remedies, whether or not based on misappropriation of a trade secret.

M.C.L. 445.1908. The Sixth Circuit has not interpreted or applied the MUTSA's displacement provision. *Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 270 F.Supp.2d 943, 946 (W.D. Mich. 2003). However, the Western District of Michigan decided that in determining whether or not a claim is displaced, under the MUTSA, courts should examine whether the claim is based solely on the misappropriation of a trade secret. *Id*. If such a claim is based solely on the misappropriation then it must be dismissed. *Id*.

Plaintiff did not respond to Defendant's preemption arguments in the Reply, and therefore did not submit the facts upon which the intentional interference with a contractual relationship claim

is based on. The Complaint alleges that the Defendant intentionally interfered with a contractual relationship between the Plaintiff and Ford by "inducing [Ford] to unjustifiably breach the contract, misappropriating Vector's trade secrets and inducing [Ford] to replace the Vector Tu Tone Product with a duplicate product improperly acquired by 3M." (Compl. ¶ 31). The language of the Complaint clearly states that the intentional interference with a contractual relationship is based on the alleged misappropriation of the Plaintiff's trade secrets. Pursuant to the MUTSA's displacement provision, Plaintiff's intentional interference with a contractual relationship claim may be preempted, as it is based on the alleged misappropriation. As such, the Plaintiff has not shown that there is a likelihood of success on the merits, as to the intentional interference with a contractual relationship claim.

### B.     Irreparable Injury

Generally, an injunction may not issue if there is an adequate remedy at law. *Gilley v. United States*, 649 F.2d 449, 454 (6th Cir. 1981). It is well settled that a plaintiff's harm is not irreparable if it is fully compensable by money damages. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). However, an injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate. *Id*. at 511-512.

Plaintiff argues that without the protection of a preliminary injunction other persons or entities may come into possession of the trade secrets and Plaintiff's continued existence would be in jeopardy because the contract with Ford is a major source of sales for the Plaintiff. Plaintiff has not, however, submitted any evidence to support this assertion. Also, the loss of the Ford contract, if found to be Plaintiff's injury, is fully compensable by money damages and as such preliminary injunction is not an appropriate remedy.

### C. Harm to Others

Plaintiff claims that the Defendant will suffer no harm from the granting of a preliminary injunction. Plaintiff argues that the granting of a preliminary injunction would simply return the parties to the position they were in before the alleged misappropriation or interference with the contract between the Plaintiff and Ford. Defendant did not respond to Plaintiff's argument regarding the any potential harm to others.[2] As such, it appears that there will be minimal harm to others if the preliminary injunction is granted.

### D. Public Interest

Plaintiff finally argues that the granting of a preliminary injunction in the current matter is consistent with the MUTSA which express strong public policy of protecting trade secrets and enjoining actual or threatened misappropriation. Defendant also did not respond to Plaintiff's public interest argument.

### III. CONCLUSION

Weighing the factors and facts presented to the Court, Plaintiff has not shown that it is entitled to a preliminary injunction in this matter.

---

[2] Defendant only addressed the first two elements required to grant a motion for preliminary injunction, in the Response, likelihood of success on the merits and irreparable harm.

Accordingly,

IT IS HEREBY ORDERED that Plaintiff's Motion for Preliminary Injunction **[Docket No. 2, filed March 30, 3006]** is DENIED.

s/ DENISE PAGE HOOD
DENISE PAGE HOOD
United States District Judge

DATED: October 20, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 20, 2006, by electronic and/or ordinary mail.

s/William F. Lewis
Case Manager
